IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES A. NIEDERSTADT,

    Plaintiff,

v.                                                                                  No. CV 13-283 JAP/SCY

FNU WOLF, *et al.*,

    Defendants.

## REPORT AND RECOMMENDATIONS

This matter comes before me on Defendants' *Martinez* Report and Motion for Summary Judgment. *Doc. 66*. Having reviewed the accompanying briefing and relevant law, I recommend that the Court **GRANT** Defendants' Motion.

**I.  BACKGROUND**

The facts of this case are set forth in my prior Report and Recommendations filed June 23, 2014. *Doc. 61*. As is relevant here, Plaintiff, maintains two 42 U.S.C. § 1983 claims, one for wrongful arrest in violation of his Fourth Amendment rights by Defendant McGarry on the night of January 14, 2013, and one for deliberate indifference in violation of his Fourteenth Amendment rights when Defendant Lackey caused him to be confined to a cell filled with bleach at the Lincoln County Detention Center ("LCDC"). *See doc. 3 at 2, doc. 4 at 2, 4.*

On August 20, 2014 this Court issued an order for a *Martinez* report with regard to the above-described claims. *Doc. 64*. Defendants filed their *Martinez* report and Motion on October 6, 2014. *Doc. 66*. Defendants seek summary judgment on the basis of qualified immunity and as a matter of law. *See generally id.* The matter was fully briefed on October 31, 2014. *Doc. 71*.

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) requires that a party seeking summary judgment demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In our circuit, the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (quoting *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991)) (internal quotations omitted).

Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex*, 477 U.S. at 323). Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

The court must adhere to three principles when evaluating a motion for summary judgment. First, the court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.

*See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).  Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.

When evaluating the pleadings of a party proceeding *pro se*, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party.  *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991).  A court is not required, however, to assume the role of advocate for the *pro se* litigant, nor does the mere fact of appearing *pro se* alleviate the litigant's burden of presenting sufficient evidence to demonstrate a genuine factual dispute that would allow him to survive summary judgment.  *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("Pro se litigants are subject to the same rules of procedure that govern other litigants.").

### B. Qualified Immunity

The doctrine of qualified immunity shields "government officials performing discretionary functions. . .from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In practice, "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once a defendant has asserted this defense, the plaintiff must demonstrate, on the facts alleged, both that (i) the defendant's actions violated his or her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged misconduct. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

### III.    UNDISPUTED FACTS

#### THE JANUARY 14, 2013 ARREST

1. On January 14, 2013, Defendant Sean McGarry was employed as a police officer by the Village of Capitan, New Mexico. *Doc. 66*, Ex. G ¶¶ 2, 4-5.

2. At approximately 11:04 a.m. on January 14, 2013, Defendant McGarry was dispatched to 101 East Fourth Street in Capitan to investigate a report of a man breaking a car window with a stick. *Id.* ¶ 9.

3. Defendant McGarry arrived at that location and observed a white Oldsmobile Bravada with a broken front passenger side window. He met with Joann Butler, the driver of the vehicle with the broken window, and her passenger, Ryan Holland, who both stated that a tall male who "looked Indian" had smashed the window with a large stick while threatening to kill them.[1] While attending to that call, Defendant McGarry received another report, this time of a battery in progress at 118 W. Third Street in Capitan. *Id.* Ex. 1.

4. When Defendant McGarry reached that location, he found the victim, Michael Hernandez, bleeding from a head wound and a large stick lying nearby. *Id.* When Defendant McGarry asked Mr. Hernandez who had hit him, Mr. Hernandez stated that Plaintiff, Charles Niederstadt, had committed the battery with the large stick. Defendant McGarry observed blood on the stick and proceeded to collect it as evidence. *Id.*

5. Defendant McGarry left the scene and went to a Shell gas station, where he saw Plaintiff inside the gas station store. *Id.*

6. Plaintiff observed Defendant McGarry pulling into the station, exited the store, and began shouting threats at Defendant McGarry, including a statement that he would kill

---

[1] Plaintiff Charles Niederstadt identifies himself as Native American. *Doc. 4* at 2.

Defendant McGarry. *Id.* After Defendant McGarry made several requests for compliance, Plaintiff knelt on the ground. Defendant McGarry then arrested Plaintiff for aggravated battery, assault on a peace office, and criminal damage to property. *Id.*

7. After arresting Plaintiff, Defendant McGarry filed a criminal complaint which included a statement of probable cause reflecting the facts set forth above. *Id.*, Ex. 2. Magistrate Lorena Lamay determined that there was probable cause to arrest Plaintiff. *Id.*

**PLAINTIFF'S CONFINEMENT AT THE LINCOLN COUNTY DETENTION CENTER**

8. Plaintiff was, after his arrest, confined to the LCDC until approximately March 15, 2013. *See generally doc. 67*.

9. On February 1, 2013, Plaintiff, who alleges he is diabetic, filed a grievance stating that the medical staff at LCDC had improperly withheld medical treatment for his diabetes. *Id.* Bates Stamp No. 000070.

10. On February 2, 2013, Plaintiff filed a request seeking access to the law library. *Id.* Bates Stamp No. 000068.

11. On February 3, 2013, Plaintiff sought treatment for an ear infection. *Id.* Bates Stamp No. 000072-73.

12. On the same day, Plaintiff filed a request for access to the law library. *Id.* Bates Stamp No. 000066.

13. On February 6, 2013, Plaintiff again sought medical treatment for his ear. *Id.* Bates Stamp No. 000076.

14. On February 7, 2013, Plaintiff requested medical treatment for an unspecified ailment. *Id.* Bates Stamp 000079.

15. On February 8, 2013, Plaintiff requested medical treatment for a rash on his legs. *Id.* Bates Stamp 000079-80.

16. On February 9, 2013, Plaintiff filed a grievance alleging that the LCDC medical staff were discriminating against him. *Id.* Bates Stamp No. 000071.

17. On February 11, 2013, Plaintiff again received medical treatment, this time for an incision that was producing drainage. *Id.* Bates Stamp No. 000078.

18. On February 23, 2013, Plaintiff filed a grievance alleging that guards at LCDC withheld his legal mail. *Id.* Bates Stamp No. 000068.

19. On February 27, 2013, Plaintiff filed a grievance alleging both that LCDC had failed to respond to four previous grievances and that LCDC staff had prevented him from communicating with his attorney. *Id.* Bates Stamp No. 000065

20. On February 28, 2013, Plaintiff filed a request for his phone card funds to be transferred to commissary funds. *Id.* Bates Stamp No. 000030.

21. On March 8, 2013, Plaintiff filed a request alleging that legal forms he had requested were being improperly withheld by prison staff. *Id.* Bates Stamp No. 00050.

22. Plaintiff was held in administrative segregation on February 28, 2013. *Id.* Bates Stamp No. 000040.

23. Apparently, three different cleaning solutions could be used to mop detention cells at LCDC: CorrectPac Germicidal Detergent, CorrectPac Heavy Duty Cleaner, and Reliance Germicidal Bleach. However, based on the material safety data sheets provided and Plaintiff's pleading, the Court assumes that Reliance was the product used, since the

  CorrectPac products are described as having a "fresh, antiseptic like" or a "floral" odor,

  respectively, whereas Reliance is described as smelling like bleach. *Id.* Ex. E at 1, 3, 8.[2]

24. According to LCDC prison sanitation procedures in effect at the relevant time, locked

  cells are cleaned daily, including mopping the floor. There is no provision in the

  procedures for the cell floor to be covered with standing cleaning solutions. When

  cleaning using Reliance or other cleaning products, the staff at LCDC do not use

  respiratory equipment or protection. *Doc. 66* Ex. A ¶¶ 4, 6, Ex. F.

25. When Defendant Lackey cleaned the cell, he did so "in accordance with [the prison

  management facility's] policies and procedures." *Id.* Ex. A ¶ 3.

## IV. ANALYSIS

### A. Defendant McGarry Had Probable Cause to Arrest Plaintiff

Plaintiff's false arrest claim implicates his Fourth Amendment right to be free from illegal seizure. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008); *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)(explaining that a false arrest claim is a claim under the Fourth Amendment). Defendant McGarry arrested Plaintiff for three different crimes: aggravated battery, assault on a police officer, and criminal damage to property. *Doc. 66*, Ex. G, Ex. 2. It is undisputed that when Defendant McGarry arrested Plaintiff, he did not have a warrant to do so. A warrantless arrest is permitted when an officer "has probable cause to believe that a person committed a crime." *Romero*, 45 F.3d at 1476. "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v.*

---

[2] Plaintiff asserts that his cell smelled like bleach fumes at that there was bleach on the floor of his cell. *Doc. 46* at 1-2. Defendants do not dispute that Plaintiff's cell was cleaned using a cleaning product that smelled like bleach.

7

*Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted).  Having reviewed the undisputed facts and elements of each crime, I find that Defendant McGarry had probable cause to arrest Plaintiff for each of these three offenses.

                i.        *Aggravated Battery of Michael Hernandez*

The elements of aggravated battery are an unlawful touching made with the intent to injure. NMSA 1978 § 30-3-5.  Plaintiff does not dispute that an assault occurred at 118 W. Third Street and that Michael Hernandez identified him as the assailant and the stick Defendant McGarry recovered as the weapon used to commit the battery.  Undisputed Facts ("UFs") 3-4.  In fact, in his own pleadings, Plaintiff states that he and "Mike" were involved in a physical altercation, during which he hit "Mike" with a stick.  *Doc. 4* at 2.  Based on these facts, I find that a reasonable officer in Defendant McGarry's position would believe that Plaintiff had committed the crime of battery;  therefore, Defendant McGarry had probable cause to arrest Plaintiff for this charge.

                ii.        *Assault of Defendant McGarry, a peace officer*

As is relevant here, the elements of assault on a peace officer are engaging in threatening or menacing conduct towards a peace officer while the peace officer is acting lawfully as a peace officer and causing the peace officer to reasonably believe he is in danger of an imminent battery.  NMSA 1978 § 30-22-21(A)(2).  Plaintiff does not specifically contravene Defendant McGarry's assertion that Plaintiff shouted threats at him, including threatening to kill him when Defendant McGarry confronted him at the Shell station.  *Doc. 4* at 4, UF 6.  Nor does Plaintiff dispute that he advanced towards Defendant McGarry or that Defendant McGarry was acting pursuant to his lawful duties as a peace officer.  *Doc. 4* at 4, UFs 1, 6.  In light of both Plaintiff's behavior towards Defendant McGarry, and the violent conduct for which Defendant McGarry

8

was investigating Plaintiff, a reasonable officer would have believed that he was in imminent danger of injury. Defendant McGarry therefore had probable cause to arrest Plaintiff for this charge.

### iii. Criminal damage to property

The elements of criminal damage to property are the intentional damaging of any real or personal property with the consent of the property's owner. NMSA 1978 § 30-15-1. Plaintiff does not dispute that he was at the same place as Joann Butlers' vehicle on January 14, 2013, or that he threw a stick at her passenger side window. *Doc. 4* at 3; UF 2. Further, Plaintiff does not dispute the witness accounts from the 101 East Fourth Street incident regarding a car window being smashed in with a large stick. UF 2. Therefore, when Defendant McGarry arrested Plaintiff, he knew (1) a person who looked to be Native American had smashed the window without Ms. Butler's consent, (2) it had been smashed with a large stick, (3) Plaintiff is Native American, (4) Mike Hernandez stated that Plaintiff had assaulted him with a large stick, (5) Defendant McGarry found a large bloody stick near the location of the assault on Mike Hernandez, and (6) Plaintiff was behaving in a potentially violent and threatening manner. Based on these facts, a reasonable officer could have believed that Plaintiff was responsible for smashing Ms. Butler's passenger side window; therefore, Defendant McGarry had probable cause to arrest Plaintiff for this crime.

Because I find that Defendant McGarry had probable cause to arrest Plaintiff for all three crimes, he is entitled to summary judgment on this cause of action.

### B. Plaintiff's Due Process Claim Against Defendant Lackey

Plaintiff also brings a conditions-of-confinement and/or delay in medical care claim against Defendant Lackey. He contends that Defendant Lackey violated his Fourteenth

9

Amendment rights[3] when, on February 28, 2013, Defendant Lackey "push[ed] [Plaintiff] into cell. . .with it full of bleach (1/4 inch on the floor). . ." and failed to move Plaintiff from the cell despite Plaintiff's repeated assertions that he was being harmed by the fumes. *Doc. 46* at 1-2.[4]

Under the Eighth Amendment, a prison official may not act with deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Two conditions must be met in order to show deliberate indifference: first, the deprivation must be "sufficiently serious" under an objective standard; second, the prison official must have had subjective knowledge of the risk of harm. *See Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008)(citing *Farmer*, 511 U.S. at 834, 837). Defendant Lackey asserts that Plaintiff has not presented evidence of sufficiently serious harm and that Defendant Lackey could not be deliberately indifferent to conditions that did not exist in the cell. *Doc. 66* at 8-10.

     *i.*    *The objective element*

Under the first prong of the Eight Amendment analysis, an in-custody mistreatment claim only amounts to a Constitutional violation when it is "sufficiently serious" to result in substantial harm. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)(citation omitted). Defendant Lackey points to Plaintiff's lack of documentation of this injury through a grievance or medical records as undermining his claim of sufficient seriousness. *Doc. 66* at 4, 8. It is true that Plaintiff's only evidence that his ailment was "sufficiently serious" are his own allegations that, after his exposure to the bleach fumes, he suffered headaches for three to four days and a sore throat for two weeks. *Doc. 46* at 1-2. Even absent a grievance filed or medical records to

---

[3] As I have previously explained, because Plaintiff was a pre-trial detainee at the time of this incident, Plaintiff's claim is properly pled under the Fourteenth, not the Eighth, Amendment. *Doc. 61* at 10. As I further explained, it is a distinction without a difference because the Court must apply an Eighth Amendment analysis to this claim. *Id.*
[4] I recognize that, while Plaintiff complained of the bleach in his cell in his Complaint, he did not claim his cell had a quarter inch of bleach on the floor until his responsive briefing to Defendants McGarry and Spear's motion to dismiss. Because Plaintiff proceeds *pro se*, and in the interest of judicial efficiency, I will consider this factual allegation is if it were made in his Complaint.

document an alleged injury, however, a plaintiff's testimony is admissible and can alone be sufficient to establish harm. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (factual averments within personal knowledge admissible as evidence). Further, while Defendant Lackey contends that Plaintiff only suffered transient harm, transient harm is sufficient to make out an Eighth Amendment claim so long as there is a sufficient allegation of severe pain. *See*, *e.g.*, *Al-Turki v. Robinson*, 762 F.3d 1188, 1193-94 (10th Cir. 2014)(plaintiff's severe pain lasting only several hours while passing a kidney stone was sufficient to sustain an Eighth Amendment claim). Here, Plaintiff has presented evidence that he suffered relatively significant after effects which, for the reasons I set forth in my first Report and with reasonable inferences drawn in favor of Plaintiff, sustains his claim of sufficiently serious injury. *Doc. 61* at 10-11.

        ii.     *The subjective element*

As to the second prong, a defendant official will be found to have a sufficiently culpable state of mind where "the official [is] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir.1996)(quotation omitted). A prison official will be held liable only if the "official knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

Plaintiff alleges, as a conditions-of-confinement claim, that he repeatedly informed Defendant Lackey that he was suffering from the exposure to bleach fumes and Defendant Lackey was deliberately indifferent to this risk to his safety. *Doc. 46* at 1-2. However, that is all Plaintiff alleges. He does not allege that Defendant Lackey actually saw the bleach on the floor when Defendant Lackey placed him in his cell. He provides no detail about how he described

his condition or the state of the cell to Defendant Lackey, or what Defendant Lackey could visually or aurally observe about his condition, or for how long (for example, 5 minutes or an hour) he asked Defendant Lackey to remove him from his cell.  Further, according to Defendant Lackey, he would not have been aware of any risk because he cleaned the cell in accordance with prison procedures that had not apparently resulted in prior complaints. In sum, Plaintiff fails to present evidence that Defendant Lackey acted recklessly in placing him in the cell and apparently refusing to remove him from it.  *Farmer*, 511 U.S. at 836-37 (equating deliberate indifference with recklessness).

To the extent that Plaintiff alleges that Defendant Lackey's failure to act resulted in a delay in medical treatment, a delay in medical care may satisfy the subjective element of the deliberate indifference test.  *See, e.g., Sealock*, 218 F.3d at 1210.  I note that in order to violate the Eighth Amendment, delay claims generally require "life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)(citation and quotation omitted).  Neither situation is present here.  The most favorable reasonable inference I can draw for Plaintiff from Plaintiff's facts is that Defendant Lackey knew that Plaintiff was complaining about the fumes of the cleaning solution in his cell and those fumes (one that Defendant Lackey and others had been exposed to with no ill effect, *see* UFs 25-26) were causing Plaintiff discomfort.  Plaintiff does not assert that he believed the situation was life-threatening.  Further, as discussed above, Plaintiff's failure to provide any details about what he communicated to Defendant Lackey about his condition precludes the apparent exacerbation scenario.  *Doc. 46* at 2, *Cf. Sealock*, 218 F.3d at 1210 (the subjective element was met where the plaintiff presented evidence he informed the defendant guard that he believed he was suffering a heart attack, the defendant observed

symptoms of a heart attack, and informed the plaintiff not to "die on [the defendant's] shift");

*accord. Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 403 (10th Cir. 2009).

Therefore, I cannot find that Defendant Lackey knew of, and disregarded, an excessive risk to Plaintiff's health and well-being such that Defendant Lackey had the requisite mental culpability under the deliberate indifference test.

IV. CONCLUSION

For the reasons discussed above, I find that the Court should GRANT Defendants' Motion for Summary Judgment and dismiss Plaintiff's action WITH PREJUDICE.

    /s/ Steven C. Yarbrough
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**